

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | |
|---|---|
| **LISA A. NKONOKI, individually;** **NKONOKI ENTERTAINMENT GROUP, LLC,** Plaintiffs, v. **WASHINGTON TRUST COMPANY; and DOES 1-10,** Defendants. | Case No.: _____ **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** I.   Equal Credit Opportunity Act 15 U.S.C. §1691 et seq. II.  Fair Housing Act 42 U.S.C. §3601 et seq. III. 42 U.S.C. §1981 IV.  42 U.S.C. §1982 V.   Connecticut CUTPA C.G.S. §42-110b et seq. VI.  Breach of Covenant of Good Faith and Fair Dealing VII. C.G.S. §47-10 Conveyance Defect — Jurisdictional |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### INTRODUCTION

1.  This is a civil action for damages and injunctive relief arising from Washington Trust Company's racially discriminatory treatment of Plaintiff Lisa A. Nkonoki — a Black woman entrepreneur, builder, and homeowner — in the origination, servicing, appraisal, and enforcement of a mortgage on property located at 81 Poplar Hill Drive, Farmington, Connecticut 06032. Plaintiff personally built her home in 2014 and 2015 on land she owned free and clear, without any construction loan. A certified independent appraisal values the property at $1,757,000. Washington Trust has used artificially suppressed valuations in enforcement proceedings — valuations that contradict Washington Trust's own origination appraisals and that Plaintiff disputes as discriminatorily manipulated to serve Washington Trust's enforcement interests at the expense of a Black woman homeowner.

2.  Washington Trust Company is not a stranger to federal fair lending enforcement. On September 13, 2023 — less than three years ago — the United States Department of Justice entered a $9,000,000 consent order against Washington Trust for discriminatory

redlining and fair lending violations affecting minority borrowers in Rhode Island and Connecticut. That consent order documented Washington Trust's pattern of treating minority borrowers differently from similarly situated white borrowers. Plaintiff — a Black woman homeowner in Connecticut — is precisely the category of minority borrower the DOJ consent order was designed to protect.

3. Washington Trust's own internal communications document the discriminatory nature of its treatment of Plaintiff. Washington Trust officials including Davis and Bessette generated internal communications characterizing aspects of Plaintiff's situation and Washington Trust's handling of it as unprecedented — an acknowledgment by Washington Trust's own personnel that Plaintiff was being treated differently from similarly situated borrowers. This internal acknowledgment of unprecedented treatment, against the backdrop of the September 2023 DOJ consent order, establishes the discriminatory predicate for the claims set forth herein.

4. The conveyance by which Washington Trust purports to hold the mortgage on Plaintiff's property suffers from a defect under Connecticut General Statutes §47-10 that renders Washington Trust's claimed mortgage interest void or voidable and deprives the Connecticut Superior Court of subject matter jurisdiction over the enforcement proceedings. Plaintiff raises this conveyance defect as an independent ground for relief.

## THE PARTIES

5.  Plaintiff LISA A. NKONOKI is an individual residing at 81 Poplar Hill Drive, Farmington, Connecticut 06032. She is a Black woman who personally built her home in 2014 and 2015 on land she owned free and clear. She is the founder and CEO of Nkonoki Entertainment Group, LLC doing business as Live Your Dreams!, with her principal professional address at 81 Poplar Hill Drive, Farmington, Connecticut 06032. At the time of the mortgage origination Plaintiff generated substantial professional revenues sufficient to service a properly structured mortgage on a property she had built free and clear on land she owned.

6.  Plaintiff NKONOKI ENTERTAINMENT GROUP, LLC is a Connecticut limited liability company doing business as Live Your Dreams! at 81 Poplar Hill Drive, Farmington, Connecticut 06032. The property is the commercial address of Plaintiff's forty-year entertainment management, coaching, and advocacy business.

7.  Defendant WASHINGTON TRUST COMPANY is a federally regulated financial institution organized under the laws of Rhode Island with principal offices at 23 Broad Street, Westerly, Rhode Island 02891. Washington Trust does business in Connecticut and is subject to the jurisdiction of this Court. Washington Trust is subject to the September 13, 2023 Department of Justice consent order, No. 1:23-cv-00395 (D.R.I.), requiring Washington Trust to remediate discriminatory lending practices and implement fair lending compliance measures.

8.  DOES 1-10 are individuals and entities whose identities are presently unknown who participated in, directed, approved, or had knowledge of the discriminatory conduct alleged herein.

## JURISDICTION AND VENUE

9.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 over claims arising under the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq.; the Fair Housing Act, 42 U.S.C. §3601 et seq.; and 42 U.S.C. §§1981 and 1982. Supplemental jurisdiction over state law claims exists pursuant to 28 U.S.C. §1367.

10.   Diversity jurisdiction independently exists pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000, Plaintiffs are citizens of Connecticut, and Defendant Washington Trust is a citizen of Rhode Island.

11.   Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the property is located in Farmington, Connecticut; the mortgage was originated and serviced in Connecticut; related proceedings are pending in Connecticut Superior Court; and all financial harm to Plaintiffs occurred in this District.

# FACTUAL ALLEGATIONS

## I. PLAINTIFF BUILT HER HOME ON FREE AND CLEAR LAND

12. In 2014 and 2015 Plaintiff Lisa A. Nkonoki personally built her home at 81 Poplar Hill Drive, Farmington, Connecticut. She did so on land she owned free and clear — without any construction loan, without any bank financing for the construction, and without any encumbrance on the land at the time of construction. The home was Plaintiff's own creation, built on her own property, with her own resources.

13. A certified independent appraisal of the property establishes its fair market value at $1,757,000. Washington Trust has relied upon and submitted substantially lower property valuations in the enforcement proceedings — valuations that Plaintiff disputes as manipulated to serve Washington Trust's litigation interests rather than to reflect the property's true market value. The disparity between the certified independent appraisal and Washington Trust's submitted valuations is itself evidence of discriminatory undervaluation of a Black woman's property consistent with the institutional pattern of fair lending violations documented in the September 2023 DOJ consent order.

14. Washington Trust's own conduct at origination in 2015 establishes the discriminatory manipulation of the appraisal process that characterizes its treatment of Plaintiff throughout this transaction. At origination Washington Trust obtained an initial appraisal of the property that it deemed insufficient for its purposes — an appraisal valued at approximately $1,900,000. Washington Trust then obtained a second appraisal valued at $2,800,000 and used that higher figure to support the mortgage origination when the higher number served Washington Trust's interest in making the loan. Washington Trust thus engaged in appraisal shopping at origination — obtaining multiple appraisals and selecting the figure that served its financial interests — a practice that federal fair lending regulators have specifically identified as a predatory lending concern. Washington Trust is now relying on a substantially lower valuation in the enforcement proceedings — a figure lower than even Plaintiff's certified independent appraisal of $1,757,000 — to support mortgage enforcement when a lower number serves its interests. The same institution. The same property. A $2,800,000 appraisal when Washington Trust wanted to make the loan. A substantially lower figure when Washington Trust wants to enforce it. This documented pattern — using appraisal values that serve Washington Trust's financial interests regardless of the property's true value — is direct evidence of discriminatory appraisal manipulation that the Fair Housing Act, the Equal Credit Opportunity Act, and the September 2023 DOJ consent order were designed to prevent and remedy.

15. The property at 81 Poplar Hill Drive is not merely Plaintiff's residence. It is the primary professional address of Nkonoki Entertainment Group, LLC — a forty-year

entertainment management, coaching, and advocacy business. Washington Trust's discriminatory conduct threatens not just Plaintiff's home but her forty-year professional enterprise.

## II. THE TAX FORECLOSURE ACTION AND EXORBITANT LEGAL FEES

16. While the primary mortgage enforcement proceedings in Connecticut Superior Court Case No. HHD-CV19-6118190-S were already actively pending, Washington Trust initiated a separate tax foreclosure action against the same property targeting the same defendant in connection with the same real property. The filing of a duplicative enforcement action while primary proceedings were already pending is a departure from standard lending and enforcement practice and constitutes an additional act of oppressive conduct toward a Black woman homeowner inconsistent with Washington Trust's obligations under the September 2023 DOJ fair lending consent order.

17. In the course of these enforcement proceedings Washington Trust has charged, demanded, and sought to recover legal fees and costs that are exorbitant, disproportionate, and inconsistent with standard mortgage enforcement practice. The imposition of excessive and disproportionate legal fee demands on a minority borrower — demands that compound the financial harm of the underlying discriminatory enforcement, inflate the redemption amount beyond what standard mortgage practice requires, and reduce Plaintiff's practical ability to redeem — constitutes an additional act of discriminatory and unfair conduct. Washington Trust's fee demands serve to deepen the financial burden on Plaintiff in a manner consistent with the predatory treatment of minority borrowers documented in the DOJ consent order.

## III. THE DOJ CONSENT ORDER — WASHINGTON TRUST'S DOCUMENTED PATTERN

18. On September 13, 2023, the United States Department of Justice filed and simultaneously resolved a fair lending complaint against Washington Trust Company in the United States District Court for the District of Rhode Island. The consent order — No. 1:23-cv-00395 (D.R.I.) — required Washington Trust to pay $9,000,000 in remediation for discriminatory redlining and fair lending violations affecting minority borrowers in Rhode Island and Connecticut.

19. The DOJ consent order documented Washington Trust's institutional pattern of treating minority borrowers differently from similarly situated white borrowers in the origination, pricing, and servicing of mortgage loans. The consent order's geographic scope specifically included Connecticut — the state in which Plaintiff's property is located and in which the mortgage at issue was originated and is being enforced.

20. Washington Trust entered into the consent order less than three years before the filing of this complaint. The consent order's mandated fair lending compliance measures were in effect throughout the period of Washington Trust's treatment of Plaintiff. Washington

Trust's post-consent-order conduct toward Plaintiff — a Black woman homeowner in Connecticut — including the appraisal manipulation, duplicative enforcement actions, and exorbitant fee demands described herein, must be evaluated against the backdrop of the institutional discrimination the DOJ documented and Washington Trust admitted.

## IV. THE UNPRECEDENTED TREATMENT — DAVIS AND BESSETTE COMMUNICATIONS

21. Washington Trust's own internal communications document that the company's treatment of Plaintiff departed from standard practice. Washington Trust officials including Davis and Bessette generated internal communications characterizing aspects of Plaintiff's situation and Washington Trust's handling of it as unprecedented — an acknowledgment by Washington Trust's own personnel that Plaintiff was being treated differently from the standard approach applied to similarly situated borrowers.

22. These communications — generated by Washington Trust employees in the ordinary course of business — are admissible as party admissions under Fed. R. Evid. 801(d)(2). They establish that Washington Trust itself recognized that its treatment of Plaintiff was outside the norm of standard mortgage servicing and enforcement practice. When a regulated financial institution subject to an active DOJ consent order for discriminatory lending acknowledges internally that it is treating a Black woman borrower in an unprecedented manner, that acknowledgment raises a strong inference of discriminatory motivation under the Fair Housing Act and Equal Credit Opportunity Act.

23. Plaintiff will obtain the complete Davis and Bessette communications through discovery. The communications known to Plaintiff at the time of filing this complaint are sufficient to establish the factual predicate for the discriminatory treatment claims. Plaintiff reserves the right to amend this complaint as additional communications are identified through discovery.

## V. THE C.G.S. §47-10 CONVEYANCE DEFECT

24. Connecticut General Statutes §47-10 requires that any conveyance of an interest in real property — including a mortgage — be executed with the formalities required for a valid deed, including witnesses to the grantor's signature. A conveyance that fails to satisfy the requirements of §47-10 is void or voidable and does not convey a valid interest in the property.

25. The conveyance by which Washington Trust purports to hold the mortgage on Plaintiff's property at 81 Poplar Hill Drive, Farmington, Connecticut suffers from a defect under C.G.S. §47-10. Specifically, the conveyance documentation fails to satisfy the witnessing requirements that §47-10 mandates for a valid real property conveyance in Connecticut.

26. This conveyance defect is not merely a technical irregularity. It goes to the validity of Washington Trust's claimed interest in the property. A mortgage that was not validly conveyed under C.G.S. §47-10 does not give the purported mortgagee the right to enforce

it. Plaintiff raised the C.G.S. §47-10 conveyance defect in the state court proceedings. Washington Trust has continued to pursue mortgage enforcement despite the unresolved conveyance defect — conduct inconsistent with the good faith obligations of a regulated financial institution subject to a federal fair lending consent order.

## VI. PLAINTIFF'S PROPERTY AND PROFESSIONAL STANDING

27. Plaintiff Lisa A. Nkonoki is a Black woman entrepreneur with over forty years of professional experience in entertainment management, coaching, public relations, and advocacy. At the time of the mortgage origination Plaintiff generated substantial professional revenues sufficient to service a properly structured mortgage on a property she had built free and clear on land she owned. Washington Trust's racially discriminatory treatment of Plaintiff in the origination, servicing, and enforcement of the mortgage on this property has caused substantial financial and professional harm that Plaintiff seeks to remedy through this action.

## CAUSES OF ACTION

### COUNT I — EQUAL CREDIT OPPORTUNITY ACT, 15 U.S.C. §1691 et seq.

Against Washington Trust Company

28. Plaintiffs incorporate all preceding paragraphs. The Equal Credit Opportunity Act prohibits creditors from discriminating against applicants on the basis of race or color in any aspect of a credit transaction. Washington Trust's treatment of Plaintiff — including the discriminatory origination appraisal shopping yielding a $2,800,000 figure followed by manipulated lower enforcement valuations, the unprecedented departures from standard practice documented in the Davis and Bessette communications, the duplicative tax foreclosure action, and the exorbitant fee demands — constitutes discrimination on the basis of race in a credit transaction in violation of ECOA. The DOJ consent order establishes Washington Trust's institutional pattern of ECOA violations affecting minority borrowers in Connecticut. Actual damages, equitable relief, and attorneys fees pursuant to 15 U.S.C. §1691e.

### COUNT II — FAIR HOUSING ACT, 42 U.S.C. §3601 et seq.

Against Washington Trust Company

29. Plaintiffs incorporate all preceding paragraphs. The Fair Housing Act prohibits discrimination in residential real estate transactions on the basis of race or color. Washington Trust obtained a $2,800,000 origination appraisal for this property and is now using a substantially lower valuation in enforcement — a documented pattern of appraisal manipulation that serves Washington Trust's financial interests at the expense of a Black woman homeowner. The DOJ consent order establishes Washington Trust's institutional Fair Housing Act violations. The unprecedented treatment documented in the Davis and Bessette communications raises a strong inference of racial motivation. Actual damages, injunctive relief, and attorneys fees pursuant to 42 U.S.C. §3613.

### COUNT III — 42 U.S.C. §1981 — RACIAL DISCRIMINATION IN CONTRACTS

Against Washington Trust Company

30. Plaintiffs incorporate all preceding paragraphs. Section 1981 guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens. Washington Trust's discriminatory treatment of Plaintiff — including appraisal manipulation across the life of the mortgage, departures from standard practice documented internally as unprecedented, duplicative enforcement actions, and exorbitant fee demands — deprived Plaintiff of the equal right to make and enforce her mortgage contract on the same terms available to similarly situated white borrowers. Actual damages, punitive damages for intentional discrimination, and attorneys fees.

## COUNT IV — 42 U.S.C. §1982 — RACIAL DISCRIMINATION IN PROPERTY RIGHTS

Against Washington Trust Company

31. Plaintiffs incorporate all preceding paragraphs. Section 1982 guarantees all citizens the same right to hold and enjoy property as is enjoyed by white citizens. Washington Trust's enforcement proceedings — based on a potentially void C.G.S. §47-10 conveyance, using manipulated property valuations, departing from standard practice in ways its own employees characterized as unprecedented, filing duplicative enforcement actions, and imposing exorbitant fees — threaten to deprive Plaintiff of her property in violation of §1982's guarantee of equal property rights regardless of race. Actual damages, injunctive relief, and attorneys fees.

## COUNT V — CONNECTICUT UNFAIR TRADE PRACTICES ACT, C.G.S. §42-110b

Against Washington Trust Company

32. Plaintiffs incorporate all preceding paragraphs. Washington Trust's conduct constitutes unfair and deceptive acts and practices in violation of C.G.S. §42-110b — including the discriminatory appraisal manipulation from origination through enforcement, the departure from standard practice documented internally as unprecedented, the filing of a duplicative tax foreclosure action while primary proceedings were pending, the enforcement of proceedings based on a potentially void C.G.S. §47-10 conveyance, and the imposition of exorbitant and disproportionate legal fee demands. Actual damages, punitive damages pursuant to C.G.S. §42-110g, and attorneys fees.

## COUNT VI — BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Against Washington Trust Company

33. Plaintiffs incorporate all preceding paragraphs. Washington Trust breached the implied covenant of good faith and fair dealing by: obtaining a $2,800,000 origination appraisal and then using artificially suppressed valuations in enforcement; departing from standard mortgage servicing practice in ways its own employees characterized as unprecedented; filing a duplicative tax foreclosure action while primary proceedings were already pending; imposing exorbitant and disproportionate legal fees that inflate the redemption amount; and enforcing proceedings based on a potentially void C.G.S. §47-10 conveyance. Actual damages and equitable relief.

## COUNT VII — C.G.S. §47-10 CONVEYANCE DEFECT — DECLARATORY RELIEF

Against Washington Trust Company

34. Plaintiffs incorporate all preceding paragraphs. The conveyance by which Washington Trust purports to hold the mortgage on Plaintiff's property fails to satisfy the requirements of C.G.S. §47-10. This defect renders Washington Trust's claimed mortgage

interest void or voidable. Washington Trust does not hold a valid mortgage interest in the property. Plaintiffs seek a declaratory judgment that the conveyance is void or voidable under C.G.S. §47-10 and that Washington Trust lacks a valid mortgage interest in the property, with all related relief including discharge of the purported mortgage lien from the land records.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs respectfully request judgment against Washington Trust Company granting:

A. A declaratory judgment that the C.G.S. §47-10 conveyance defect renders Washington Trust's claimed mortgage interest void or voidable and that Washington Trust lacks a valid mortgage interest in the property at 81 Poplar Hill Drive, Farmington, Connecticut

B. An order discharging the purported Washington Trust mortgage lien from the Farmington land records

C. Actual damages for all financial harm caused by Washington Trust's discriminatory treatment including all consequential financial harm flowing from the discriminatory mortgage enforcement, the duplicative tax foreclosure action, and the exorbitant fee demands

D. Punitive damages under 42 U.S.C. §§1981 and 1982 for intentional racial discrimination

E. Punitive damages under CUTPA pursuant to C.G.S. §42-110g

F. An order requiring Washington Trust to implement a loan modification consistent with the property's certified appraised value of $1,757,000 and Plaintiff's demonstrated ability to service a properly valued mortgage

G. Production of all appraisals obtained by Washington Trust in connection with the property at 81 Poplar Hill Drive from origination through the present — including the 2015 origination appraisals — and an independent appraisal at Washington Trust's expense conducted by a certified appraiser appointed by the Court

H. A full accounting of all payments made, credited, and applied under the mortgage from origination through the present, and an accounting of all legal fees charged or sought in connection with all enforcement proceedings

I. Reduction of any redemption amount to exclude all exorbitant, disproportionate, or discriminatorily imposed legal fees and costs

J. Injunctive relief as the Court deems necessary and appropriate to remedy the discriminatory conduct alleged herein

K. Attorneys fees and costs pursuant to 15 U.S.C. §1691e, 42 U.S.C. §3613, 42 U.S.C. §1988, and C.G.S. §42-110g

L. Pre- and post-judgment interest at the maximum rate permitted by law

M. Such other and further relief as this Court deems just and proper

---

**Dated: March 19, 2026**

Respectfully submitted,

_LISA A. NKONOKI, Pro Se_   8/19/26

LISA A. NKONOKI, Pro Se
81 Poplar Hill Drive
Farmington, Connecticut 06032
Tel: (860) 517-9861
Email: nkon8purpl@gmail.com

## CERTIFICATION PURSUANT TO FED. R. CIV. P. 11

By signing below the undersigned certifies that to the best of their knowledge, information, and belief formed after reasonable inquiry, the factual contentions herein have or will have evidentiary support and this Complaint is not filed for any improper purpose.

LISA A. NKONOKI
Date: March 19, 2026
81 Poplar Hill Drive, Farmington, Connecticut 06032
Tel: (860) 517-9861
Email: nkon8purpl@gmail.com